IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**DAVID EDWARD KILEY,**

    **Plaintiff,**

**vs.**                                                            **CASE NO. 4:04CV129-MP/AK**

**T. MILLS,**

    **Defendant.**

_____/


## REPORT AND RECOMMENDATION

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging that Defendant Tommy Mills was deliberately indifferent to his serious medical needs. (Doc. 9). Defendant Mills has filed a special report (doc. 22), which has been construed as a motion for summary judgment. (Doc. 30). Plaintiff was advised of his obligations to respond and provide evidentiary material in support of his claim (doc. 29), and he has responded. (Docs. 68 and 69).[1]

---

[1] These responses are both styled as responsive to Defendant Mohrman's special report, who has been dismissed as a defendant, but the materials submitted with both responses shall be considered insofar as they relate to Plaintiff's claims against Defendant Mills.

**I.     Allegations of the Amended Complaint (doc. 9)**

Plaintiff claims that on October 9, 2003, while incarcerated at the Tallahassee Detention Center he slipped and fell in the shower injuring his back and shoulder.  (Doc. 9, p. 14).  He states that there was no rubber mat on the floor outside the shower stalls.  Plaintiff claims that he initially thought he was not injured, but about two hours later (9:30 p.m) he could not move his left arm without severe pain and he began seeking medical attention.  His claims against Defendant Mills, the only remaining defendant in this cause of action, are that:

> Plaintiff then submitted requests and grievances to the jail supervisor, Defendant Captain T. Mills, seeking help in getting medical treatment, but these were only re-routed to the Medical Department.  He refused to address these issues.

**II.    Standard of Review**

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case."  Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).  All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts.  Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002).  The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  Celotex, 477 U.S. at 322-23.  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material

**No. 4:04cv129-mp/ak**

facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof.  Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  "For factual issues to be considered genuine, they must have a real basis in the record."  Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment.  Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

**No. 4:04cv129-mp/ak**

### III.   Defendant's Rule 56(e) evidence

a)   <u>Affidavit of Tommy Mills</u>

Defendant Mills has been employed at the Leon County Sheriff's Office for twenty years and was at the time of the incident in charge of security in the Medical Unit.  His duties include supervising the correctional officers who are present in the Medical Unit.  He had no authority to diagnose or treat medical conditions.  It was his practice to forward all grievances or requests concerning medical care to the Health Services Administrator employed by Prison Health Services, the entity that provided health care to inmates housed at Leon County Jail.  He attached two grievances from Plaintiff dated October 23, 2003, and November 11, 2003, which indicate they were forwarded to Susan Cole, Health Services Administrator.  Defendant Mills has no personal recollection of Plaintiff or the incident complained of in the complaint.

### IV.   Plaintiff's Response

a)   <u>Affidavit (doc. 68, exhibit 2)</u>

Plaintiff states that he submitted requests for medical care on October 23, 2003, and November 11, 2003, to Defendant Mills complaining of severe pain and that he had been trying to see a doctor for nearly three weeks.  Plaintiff states that Mills never inquired about his condition nor did he see to it that Plaintiff was treated.  Plaintiff alleges that it was Mills' duty as "overseer of the medical unit" to make such inquiry and take such action.

**No. 4:04cv129-mp/ak**

b)      <u>Medical records (doc. 70, exhibit 2)</u>

Medical records show that Rebecca Mohrman examined Plaintiff on October 22, 2003, for left shoulder pain for which Tylenol was prescribed from October 22, 2003 through October 26, 2003. X-rays taken of the left shoulder on December 29, 2003, at Holmes Correctional Institution show no bone or joint abnormality. A later x-ray on February 24, 2005, shows "moderate arthritis of the A-C joint." He was given Motrin and Advil. Some atrophy of the left triceps muscle was noted.

c)      <u>Affidavit of William Dishman (doc. 70, exhibit 2)</u>

Inmate Dishman worked with Plaintiff from March 2004 through December 2004 and knew him to be in pain from an injury which he understood occurred at the county jail. They worked together in the work camp lifting boxes and folding and sorting clothes. He did not recall Plaintiff complaining, but noted that he was frequently on sick call and this caused a problem with one of the officers.

d)      <u>Affidavit of Timothy Bodie (doc. 70, exhibit 2)</u>

Inmate Bodie worked with Plaintiff in the laundry room at Holmes CI from April 2004 through April 2005 and observed the atrophy and limitation of Plaintiff's left shoulder. He understood that the injury occurred at the county jail and he knew that Plaintiff was frequently on sick call because of this injury.

e)      <u>Affidavit of Michael Salkowski (doc. 70, exhibit 2)</u>

Inmate Salkowski worked with Plaintiff at the laundry in Holmes CI from October 2004 through March 2005, and knew him to be suffering from pain in his left shoulder,

which he understood occurred at the county jail. Plaintiff was frequently on sick call as a result of his shoulder pain and sometimes needed help with heavy lifting.

      f)      <u>Defendant Mills' responses to interrogatories (doc. 68, exhibit B)</u>

Defendant Mills describes the policy and procedure for medical emergencies, which is that a pod officer is to notify a nurse immediately, who shall evaluate the emergency and consult with the charge nurse about the disposition thereof. He also states in response to Plaintiff's inquiry about the policy of Prison Health Services, that oversight of PHS is not part of his job duties. Mills also identified, in response to Plaintiff's inquires, the inmate housed with Plaintiff during this time, including his MSP number, as well as the unidentified John Doe defendants.

## V.    Analysis

Medical claims under the Eighth Amendment have an objective and subjective component, each of which additionally is considered to encompass two subsidiary requirements. <u>Taylor v. Adams</u>, 221 F.3d 1254, 1258 (11th Cir. 2000), <u>cert</u>. <u>denied</u>, 531 U.S. 1077, 121 S.Ct. 774, 147 L.Ed.2d 673 (2001). The "objective component" of the Eighth Amendment standard requires a determination whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. See <u>Wilson v. Seiter</u>, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991). This objective component varies with the situation and the conduct in question and is responsive to "contemporary standards of decency." <u>Estelle v. Gamble</u>, 429 U.S. 97, 103, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); <u>see</u> <u>also</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). An objectively serious

**No. 4:04cv129-mp/ak**

deprivation requires (1) showing an objectively "serious medical need." Estelle, 429 U.S. at 104.  A serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).  In addition, an objectively serious deprivation requires (2) showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain" and not simply "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law. Estelle, 429 U.S. at 105-06 (internal quotation marks omitted).  See Taylor, 221 F.3d at 1257; see also Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Farrow, at 1243, quoting Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994).

To show the required subjective intent to punish the plaintiff must demonstrate that the defendant acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105.  This is defined as requiring (1) an "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists" and (2) the actual "draw[ing of] the inference." Farmer, 511 U.S. at 837.  In sum, in a claim of denial of medical attention under the Eighth Amendment "[u]ltimately, there are [] four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."  Taylor, 221 F.3d at 1258.

**No. 4:04cv129-mp/ak**

From the facts before the Court, Plaintiff has failed to show that Defendant Mills' response to his request for medical care was insufficient. According to Mills, he was responsible for security at the Medical Unit, not medical care, and whenever requests or grievances were given directly to him he gave them to the Health Services Administrator. The requests show that Defendant Mills referred the requests immediately to this person, Susan Cole. The medical records provided by Plaintiff show that he was seen by a nurse on October 23, 2003, for his shoulder pain and she prescribed Tylenol for his condition. When he was later given x-rays and it was determined that arthritis was present in his left shoulder, he was prescribed Motrin and Advil, which are not significantly different from the medication he received at the Leon County Jail. Plaintiff has not shown or even alleged that his injury was worsened because of any actions or inactions by Defendant Mills. Although he contends that Defendant Mills was responsible for his health care and should have seen to it that he received medical attention, he does not provide any evidentiary support for this contention and Defendant Mills denies it. Defendant Mills also denies any oversight of the jail's health services in his response to discovery. Although Plaintiff was provided with the name and MSP number of his cell mate at the jail, who could have perhaps corroborated his version of the facts, he did not obtain this person's affidavit and the affidavits he did provide do not add anything to his claims against Defendant Mills. None of the inmates were at the jail when the incident occurred. Thus, the evidence before the Court is that Plaintiff was injured at the jail and treated by a nurse, who prescribed him an analgesic medication. He complained of severe pain and wanted to

**No. 4:04cv129-mp/ak**

see a physician and made a written request upon Defendant Mills, who was in charge of security at the medical unit, and who forwarded the request to the Health Services Administrator whose job it was to handle such requests. When Plaintiff received x-rays a few months later at Holmes Correctional Institution for continued shoulder pain and muscle atrophy, it was determined that he had arthritis in the shoulder joint and analgesics were prescribed. There is nothing in the facts before the Court to support any claim of deliberate indifference by Defendant Mills.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment (doc. 30) be **GRANTED**, and Plaintiff's amended complaint (doc. 9) be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2).

**IN CHAMBERS** at Gainesville, Florida, this _1st_ day of March, 2007.

_s/ A. KORNBLUM_
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 4:04cv129-mp/ak**